**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-03296

LINDSAY SCHNEIDER,

      Plaintiff,

v.

MARATHON PETROLEUM COMPANY LP,

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Defendant Marathon Petroleum Company LP ("Marathon") employed Plaintiff Lindsay Schneider for seven and a half years as an environmental health and safety professional and later as a supervisor. Although Ms. Schneider's performance was exceptional throughout her employment, Marathon consistently placed her in lower salary grades than her positions warranted and paid her less than men who performed substantially similar work. It follows that Ms. Schneider was subjected to unequal pay based on sex in violation of the Colorado Equal Pay for Equal Work Act, C.R.S. § 8-5-101 *et seq.* ("CEPEWA") and sex-based wage discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Plaintiff Lindsay Schneider for her Complaint states:

<u>**PARTIES**</u>

1.    Plaintiff Lindsay Schneider is a resident of the State of Colorado.

2.      Marathon Petroleum Company LP ("Marathon") is a Delaware foreign limited partnership that is authorized to do business in Colorado.

3.      Defendant's principal office is located at 539 South Main Street in Findlay, Ohio 45840.

4.      Defendant maintains a registered agent in Colorado at 7700 E. Arapahoe Road, Suite 220 in Centennial, Colorado 80112.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), in that this action arises under federal law, specifically Title VII.

6.      This Court has supplemental jurisdiction over Plaintiff's CEPEWA claim pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices alleged herein were committed within this judicial district.

8.      At all relevant times, Marathon was an "employer" as set forth in C.R.S. § 8-5-101(5) of the CEPEWA and 42 U.S.C. § 2000e(b) of Title VII.

9.      At all relevant times, Ms. Schneider was an "employee" as set forth in C.R.S. § 8-5-101(5) of the CEPEWA and 42 U.S.C. § 2000e(f) of Title VII.

10.     The procedural prerequisites for the filing of this suit with respect to Ms. Schneider's Title VII claim have been met: Ms. Schneider filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue.

## SPECIFIC ALLEGATIONS

### Ms. Schneider's Background

11.    Ms. Schneider is a skilled and experienced energy professional.

12.    Ms. Schneider is a woman.

13.    After earning her Bachelor of Science in Analytical Environmental Studies, Ms.
Schneider worked as an environmental inspector for two U.S. cities and served as a senior
environmental scientist and environmental manager for two private corporations.

14.    Ms. Schneider earned her Master of Science in Global Energy Management in June 2022.

15.    In November 2014, Ms. Schneider was hired by QEP Resources as an Environmental
Health and Safety Enablement Lead.

16.    Andeavor (f/k/a Tesoro Corporation) acquired QEP Resources in late 2014.

17.    When Andeavor conducted an alignment of job roles in the spring of 2015, it gave Ms.
Schneider the title of Environmental Specialist rather than Senior Environmental Specialist
without basis.

18.    In October 2016, Ms. Schneider was promoted to Senior Environmental Specialist
without any change in role or responsibilities.

19.    In March 2017, Ms. Schneider was promoted to Environmental Supervisor, a role that she
was still performing when Marathon purchased Andeavor in 2018.

20.    Marathon operates a network of refineries across the U.S.

21.    Marathon includes a Gathering and Processing ("G&P") operating segment, which runs a
network of natural gas and crude oil gathering and processing systems.

**As a part of its company-wide realignment, Marathon placed Ms. Schneider in a lower salary grade than two male peers who were performing substantially similar work.**

22.    Following Marathon's acquisition of Andeavor, in February 2019, Marathon realigned the job titles and pay bands of its employees.

23.    At that time, Ms. Schneider, Dave Ettore, and Nathan Wheldon had substantially similar job duties with different geographic territories: Ms. Schneider managed multimedia programs (i.e., all programs except air), Mr. Ettore managed all programs (i.e., air and multimedia), and Mr. Wheldon managed air programs only.

24.    Ms. Schneider, Mr. Ettore, and Mr. Wheldon reported to individuals at the same level: Ms. Schneider reported to Jonathan Matt while Mr. Ettore and Mr. Wheldon reported to Rob McHale.

25.    Mr. Matt and Mr. McHale were peers who reported to Vice President Harold Rinehart.

26.    Despite the substantial similarity of their duties, Ms. Schneider was an Environmental Supervisor while Mr. Ettore and Mr. Wheldon were Environmental Managers.

27.    Marathan kept Mr. Ettore and Mr. Wheldon at a salary grade 13 or 14 while Marathon placed Ms. Schneider at a salary grade 12.

28.    At Marathon, an increase in pay grade correlates with an increase in compensation in both base salary range and bonus pay.

29.    Ms. Schneider, Mr. Ettore, and Mr. Wheldon continued to work as Environmental Supervisors/Managers with substantially similar duties until June 2020 when Ms. Schneider transitioned to a different supervisory role reporting to Mr. Matt.

30.    Throughout that time, Marathon kept Mr. Ettore and Mr. Wheldon in a higher salary grade than Ms. Schneider.

**Marathon rebuffed Ms. Schneider's request for an increase in salary grade based on an updated internal company career progression document.**

31.     In February 2019, Mr. Matt provided Ms. Schneider with an unofficial career progression document for reference as other staff questioned Marathon's realignment.

32.     As Ms. Schneider advocated for a more equitable salary grade for another employee with Mr. Matt, he told her that pay rates at hire often contribute to ongoing issues and noted that, "between you and me, we got you at a discount."

33.     According to that career progression document, Ms. Schneider's role and experience justified her placement in salary grade 13 or 14.

34.     Throughout 2019 and 2020, Ms. Schneider expressed concern to Mr. Matt that she was being paid less than men who were performing substantially equal or similar duties to her.

35.     Ms. Schneider also expressed concern at seeing internal job postings for: Environmental Supervisor, i.e., her role, at salary grade 13; non-supervisor roles requiring significantly less experience and education than Ms. Schneider at salary grades 11 and 12; and roles at salary grade 14 that matched her level of experience and current job responsibilities.

36.     Mr. Matt confirmed to Ms. Schneider that she was performing at a higher level than her assigned grade 12 but that he did not know how to explain her placement there and he was not aware of anything that he could do to increase her compensation.

37.     In January 2020, Ms. Schneider discussed her concern about pay inequity with Marathon Human Resources ("HR") employee Suzanne Pulver.

38.     Ms. Pulver provided Ms. Schneider with a Health, Environment, and Safety ("HES") Professional Career Progression document for reference that was finalized in February 2000 by Marathon Ashland Petroleum LLC, a company that no longer existed.

39.    The February 2000 HES Professional Career Progression document was more vague than, inconsistent with, and older than the document that Mr. Matt had provided to Ms. Schneider in February 2019.

40.    Regardless, the February 2000 HES Professional Career Progression document justified Ms. Schneider being placed at a Senior HES Professional or Advanced Senior HES Professional level.

41.    Ms. Pulver dismissed Ms. Schneider's concerns and referred her back to Mr. Matt to address her additional questions.

**Marathon did not increase Ms. Schneider's pay grade after moving her into a role with expanded, organization-wide duties while it paid men more for substantially similar work.**

42.    In June 2020, Ms. Schneider transitioned into a new role as Environmental Process Excellence Supervisor.

43.    In this new role, Ms. Schneider was responsible for defining, developing, and implementing the Environmental Management System for the entire G&P organization within Marathon, which was comprised of approximately 100 environmental employees.

44.    As an Environmental Process Excellence Supervisor, Ms. Schneider worked directly with Marathon's senior leadership and had a significant amount of autonomy.

45.    Marathon made no changes to Ms. Schneider's compensation; it kept her at salary grade 12.

46.    Marathon went through a layoff in October 2020.

47.    As a result of the layoff, Marathon terminated three women in senior roles, removed Ms. Schneider's supervisory duties, and changed her role to Advanced HES Professional, still within salary grade 12.

48.     While Marathon removed direct reports from Ms. Schneider's purview–laying off one Senior HES Professional and eliminating an unfilled open position–the remainder of her duties, responsibilities, and expectations remained unchanged.

49.     From June 2020 through Ms. Schneider's resignation in May 2022, several of her male peers who had the same or a narrower scope of job duties than Ms. Schneider were at salary grade 13 or higher while Ms. Schneider remained at a grade 12.

50.     This included:

    a.  Tom Colclazier, Safety Manager at a salary grade 14, who was responsible for defining, developing, and implementing safety standards in the safety programs for the entire G&P organization within Marathon;

    b.  Jake Fournier, Senior HES Professional, who was responsible for defining, developing, and implementing air programs in the G&P organization, which was a smaller subset of those programs under Ms. Schneider's purview; and

    c.  Greg McCartney, Advanced Senior HES Professional, who was responsible for defining, developing, and implementing waste and remediation programs at Marathon, which was a smaller subset of those programs under Ms. Schneider's purview.

51.     In addition, Marathon gave another male employee, Ryan Soldat, the Advanced HES Professional title and associated compensation with just five years of experience.

52.     Marathon subsequently promoted Mr. Soldat to Senior HES Professional (salary grade 13) with less than seven years of experience and the Advanced Senior HES Professional title (salary grade 14) in 2021 with eight years of experience and no advanced degree.

**Marathon dismissed Ms. Schneider's repeated and increasingly specific concerns about sex-based pay inequity.**

53.    On October 27, 2020, Ms. Schneider provided Mr. Matt with a list of male employees who were performing similar duties but had higher titles and were likely being paid much more, including Mr. Colclazier, Mr. Fournier, and Mr. McCartney.

54.    Neither Mr. Matt nor anyone else at Marathon acted in response to Ms. Schneider's October 27 email.

55.    As such, in February 2021, Ms. Schneider sent an email to Mr. Matt in which she requested a review of her wages against men in the organization doing substantially similar work pursuant to the CEPEWA.

56.    In her February 2021 email, Ms. Schneider provided Mr. Matt with the names of four men who she believed were doing substantially similar work–Mr. Colclazier, Mr. McCartney, Mr. Fournier, and Mr. Soldat–and four men who she suspected were doing similar work–Julius Blanco, Dwight Dodge, Gerald Pineda, and Doug Swartz.

57.    Mr. Matt passed along the request to Marathon's HR department.

58.    Instead of conducting a review of job duties and responsibilities, HR simply focused on Ms. Schneider's role as an Advanced HES Professional at a grade 12 and compared this to employees across a subset of Marathon with the same job title and same grade.

59.    Unsurprisingly, HR concluded that Ms. Schneider was being "compensated fairly in comparison to [her] counterparts."

60.     In response, Ms. Schneider asked Ms. Pulver to:

    a.   describe the efforts that Marathon "[has] taken to understand the actual work that
I have been assigned and am successfully executing, and the knowledge and skills
required, against the same for male peers doing substantially similar work";

    b.   confirm whether Marathon asserts that Ms. Schneider's work does not meet the
requirements of either the Advanced Senior HES Professional or Senior HES
Professional level; and

    c.   if Marathon contends that Ms. Schneider's work does not meet the requirement of
either of those positions, to explain why.

61.     Neither Ms. Pulver nor anyone else from Marathon responded at all, let alone to Ms.
Schneider's targeted questions.

62.     In March 2021, Ms. Pulver, Mr. Matt, and Mr. Matt's supervisor, the Vice President over
HES, Harold Rinehart met with Ms. Schneider.

63.     During that meeting, they provided thin justification for why Ms. Schneider's role was
considered a salary grade 11/12 and why other men, including Mr. Ettore, Mr. Wheldon, and
another possible comparator, Don Kinder, were in higher salary grades.

64.     As an explanation for why Ms. Schneider was not in salary grade 13, Mr. Rinehart also
claimed that there were no grade 13 individual contributors, i.e., those without direct reports;
however, Ms. Schneider subsequently reviewed the organizational chart and identified several
male individual contributors at salary grade 13.

65.     Following that meeting, Ms. Schneider sent an email to Mr. Matt in which she expressed
frustration with HR's cursory review of only others at Ms. Schneider's grade and title rather than

reviewing the actual work that she performed and the skills, knowledge, and effort required to complete it.

66.     To this email, Ms. Schneider attached some notes that she had kept regarding her concern about the on-going sex-based pay disparity, which included a description of the experience of Mr. Fournier and Mr. Soldat, two of the male comparators that she had identified.

67.     Both Mr. Fournier and Mr. Soldat made more than Ms. Schneider as grade 13 employees despite the fact that neither had an advanced degree, both had fewer total years of relevant professional experience than her, and all three employees performed substantially similar work.

68.     Ms. Schneider then requested a peer-to-peer review, which would require HR to investigate whether the evidence supported paying certain specified comparators more than Ms. Schneider.

69.     In particular, Ms. Schneider requested that the roles, responsibilities, and pay of Mr. Ettore, Mr. Fournier, Mr. Kinder, Mr. Soldat, and Mr. Wheldon be reviewed and contrasted with her role, responsibilities, and pay.

70.     Mr. Kinder, Ms. Schneider, and Mr. Wheldon reported directly to Mr. Matt at the time of this request.

71.     Ms. Schneider, Mr. Ettore, Mr. Kinder, Mr. Soldat, and Mr. Wheldon were all in Mr. Rinehart's organization.

72.     Although Mr. Fournier was in the Corporate Marathon group at the time, he primarily supported G&P, was referred to as "essentially an embedded G&P employee," and was moved directly into Mr. Rinehart's organization in spring 2022.

73.    Marathon failed to conduct this review and again disregarded Ms. Schneider's complaints.

74.    As an employee in salary grade 12 in 2021, Ms. Schneider's salary range was $111,300 to $166,900, with a midpoint of $139,100 and a bonus target of 15%.

75.    Even given Ms. Schneider's tenure, experience, skills, and outstanding performance, in 2021, her base salary was $136,410, $2,690 less than the grade 12 midpoint.

76.    Had Ms. Schneider been in salary grade 13 in 2021, her base salary range would have been $128,000 to $192,000 with a midpoint of $160,000 and a bonus target of 20%.

77.    Had Ms. Schneider been in salary grade 14 in 2021, her base salary range would have been $147,300 to $220,900 with a midpoint of $184,100 and a bonus target of 25% with a $25,000 long-term incentive target.

78.    Bonuses were often higher than the target given that Marathon paid bonuses annually with a multiplier based on company performance.

79.    On June 11, 2021, through counsel, Ms. Schneider notified Marathon of her concern that she was being paid less than male colleagues who were performing substantially similar work yet were being compensated more in a higher grade.

80.    After Marathon again failed to respond to Ms. Schneider's concerns, in September 2021, Ms. Schneider filed charge of discrimination 541-2021-01528 with the EEOC in which she alleged that Marathon had discriminated against her based on her sex.

81.    The sex-based pay inequity continued until Ms. Schneider resigned from her employment with Marathon in May 2022.

82.     Throughout Ms. Schneider's employment with Marathon, her performance was outstanding.

83.     The EEOC issued a Notice of Right to Sue at Ms. Schneider's request on August 9, 2023.

84.     Ms. Schneider and Marathon entered into an agreement on November 1, 2023 in which they agreed to toll the running of all applicable statutes of limitations and the post-Notice of Right to Sue 90-day window of time in which to commence litigation until January 2, 2024.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Unequal Pay in Violation of the Colorado Equal Pay for Equal Work Act)

85.     The foregoing allegations are realleged and incorporated herein by reference.

86.     Ms. Schneider performed work that was substantially similar to work that was performed by male employees, including the comparators discussed above, based on a composite of skill, effort, and responsibility.

87.     Despite this fact, Marathon paid these male employees more than Ms. Schneider.

88.     Marathon either knew or showed reckless disregard as to whether its conduct was prohibited by the CEPEWA.

89.     As a direct and proximate result of Marathon's actions, Ms. Schneider has suffered damages, including lost wages and benefits, liquidated damages, and compensatory damages.

**SECOND CLAIM FOR RELIEF**

(Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

90.     The foregoing allegations are realleged and incorporated herein by reference.

91.     Marathon subjected Ms. Schneider to less favorable terms and conditions of her employment based on sex as described in this Complaint, including but not limited to paying Ms. Schneider less than her male peers.

92.     Marathon's actions towards Ms. Schneider were done knowingly and intentionally or with reckless disregard of her rights.

93.     Marathon's conduct discriminated against Ms. Schneider based on her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

94.     As a direct and proximate result of Marathon's actions, Ms. Schneider has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**<ins>PRAYER FOR RELIEF</ins>**

WHEREFORE, Plaintiff Lindsay Schneider respectfully requests that this Court enter judgment in her favor and against Defendant and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Back pay and benefits;

C.     Injunctive and/or declaratory relief;

D.     Liquidated damages;

E.     Punitive damages;

13

F.      Attorney fees and costs of the action, including expert witness fees, as
        appropriate;

G.      Pre-judgment and post-judgment interest at the highest lawful rate; and

H.      Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted December 15, 2023.

By:     LOWREY PARADY LEBSACK, LLC

s/Ariel DeFazio
1490 Lafayette Street, Suite 304
Denver, CO 80218
Telephone: (303) 593-2595
FAX: (303) 502-9119
E-mail: ariel@lowrey-parady.com
Attorney for Plaintiff Lindsay Schneider

Plaintiff's Address:
800 S Medea Way
Denver, CO 80209

**CERTIFICATION OF GOOD STANDING**

I hereby certify that I am a member in good standing of the bar of this Court.

By:     LOWREY PARADY LEBSACK, LLC

s/Ariel B. DeFazio
1490 Lafayette Street, Suite 304
Denver, CO 80218
Telephone: (303) 593-2595
FAX: (303) 502-9119
E-mail: ariel@lowrey-parady.com
Attorney for Plaintiff Lindsay Schneider